IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
El DORADO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 1:20CR10019-001 |
| | ) |
| COLE THOMAS DIXON | ) |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The Agreement of the parties is as follows:

### WAIVER OF INDICTMENT AND PLEA OF GUILTY TO INFORMATION

1. The Defendant, COLE THOMAS DIXON, agrees to waive Indictment by a grand jury, and consents to the filing of an Information charging the Defendant with the sexual exploitation of a minor via the production of child pornography, in violation of 18 United States Code, Sections 2251(a) & (e). The Defendant further agrees to plead guilty to the Information.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

2. The Defendant, COLE THOMAS DIXON, has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime to which the Defendant is pleading guilty and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

   a. On March 1, 2019, the Columbia County, Arkansas, Sheriff's Department received a message on its tip line. The message indicated that the Defendant, COLE DIXON, a then-20-year-old resident of Magnolia, Arkansas, had been

sending indecent pictures, via cell phone, to a 12 year old boy (hereinafter the "victim"). Specifically, the complainant stated that the victim, who resides in the Eastern District of Wisconsin, had been receiving pictures from telephone number 870-299-8056, including of an adult male and a penis. Investigators thereafter received information indicating that the phone number 870-299-8056 was assigned to a cell phone used by the Defendant, COLE DIXON.

b. The victim later disclosed to a child forensic interviewer working with the FBI in Wisconsin that he had begun an online relationship with a man named "Cole" in December 2018. The victim said he initially communicated with "Cole" on a messaging application called "iFunny," but that they later began communicating by text message, around January or February of 2019. The victim said he communicated with "Cole" using his (the victim's) Apple iPhone and Apple iPad. In so doing, the victim said he sent nude images of himself to "Cole."

c. On March 4, 2019, investigators reviewed evidence found on the victim's Apple iPhone. In so doing, they observed the following, sent to the victim's iPhone from phone number 870-299-8056:

   i. Photographs of an adult male penis;

   ii. A photograph of a man later confirmed (by comparison to DIXON's official Arkansas driver's license photo) to be DIXON;

   iii. Messages discussing the sender's desire to have sex with the victim;

   iv. Messages indicating that the sender was aware that the victim was less than 14 years old; and

      v. Approximately 25 separate messages containing sexually explicit content.

d. A state search warrant was issued on March 4, 2019, authorizing the search of DIXON's residence, located at 1620 Columbia Road 36, Magnolia, Columbia County, Arkansas, for evidence of Arkansas criminal offenses, including felony Sexual Indecency with a Child.

e. During the execution of the search warrant the same day, numerous electronic devices were found in, and seized from, DIXON's residence. These included two Apple iPhones, a computer tower containing two hard drives, a Microsoft X-Box video game console, a Nintendo Switch video game console, a Nintendo DS video gaming device, and a Hewlett-Packard laptop computer.

f. Also seized during the execution of that search warrant was a physical folder containing a Russell Cellular invoice for an Apple iPhone, dated October 10, 2018. The folder also contained a record of payments made for telephone number 870-299-8056, which was signed by DIXON.

g. On March 7, 2019, another state search warrant was issued, authorizing the search of the electronic devices seized from Dixon's residence on March 4. When that warrant was executed, investigators observed the following things in one of the Apple iPhones seized from DIXON's residence:

      i. The telephone number assigned to that iPhone is 870-299-8056;

      ii. The 'device name' of that phone is set as "Cole's iPhone";

      iii. The 'Apple ID' account being used on the iPhone is associated with the email address "coledixon1998@gmail.com";

  iv. The victim's phone number, ending in 3474, is listed in the iPhone's contacts under the victim's middle name;

The Apple iPhone discussed in this paragraph is referred to hereinafter as "DIXON's iPhone."

h. During the search of DIXON's iPhone, investigators found a series of sexually explicit text and multi-media (photo and video) messages which had been sent to and from DIXON's iPhone and the victim's phone number, on or about February 2, 2019. In those messages, DIXON (then in the Western District of Arkansas) told the victim he wanted to see the victim engaging in certain kinds of sexual conduct which meets the definition of "sexually explicit conduct" set forth in 18 U.S.C. § 2256(2), including the lascivious exhibition of the victim's anus and penis. At the time he did so, DIXON knew the victim was under 14 years old. In response, the victim (then in the Eastern District of Wisconsin) complied with DIXON's requests by using the camera on his own Apple iPhone to create multiple photos and videos of himself, which he then sent to DIXON on DIXON's iPhone. Those photos and videos, found on DIXON's iPhone during the execution of the March 7 search warrant, depict the 12-year-old victim engaging in conduct DIXON had described in his preceding text messages, including displaying his (the victim's) anus, penis and pubic area for the camera.

i. No Apple iPhones have ever been manufactured in the states of Arkansas or Wisconsin. As such, the Apple iPhones used by DIXON and the victim to produce and transmit the photos and videos described in paragraph 'h' must

have been mailed, shipped, or transported in and affecting interstate commerce, prior to their use for that purpose.

j. Several other items of child pornography and child exploitation material have also been located on other electronic devices seized from DIXON's residence during the execution of the state search warrant on March 4, 2019. None of those items involve the victim, but rather they appear to have been downloaded from internet sources.

k. Based on the foregoing, the United States can prove, and the Defendant hereby admits and stipulates that, on or about February 2, 2019, in the Western District of Arkansas, El Dorado Division, and elsewhere, he employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct as that term is defined in Title 18, United States Code, Section 2256(2), for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction will be transported and transmitted using any means and facility of interstate and foreign commerce, and in and affecting interstate commerce, and that visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and such visual depiction has actually been transported and transmitted using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and also that he attempted to do so, all in violation of 18 U.S.C. § 2251(a) and (e).

## AGREEMENT REGARDING FORFEITURE

3. The Defendant hereby agrees to forfeit all rights, title and interest to the following assets, which were seized from the Defendant's residence at 620 Columbia Road 36, Magnolia, Columbia County, Arkansas, on March 4, 2019:

    a. Two Apple iPhones;
    b. A computer tower containing two hard drives;
    c. a Microsoft 'X-Box' video game console;
    d. a Nintendo 'Switch' video game console;
    e. a Nintendo 'DS' video gaming device; and
    f. a Hewlett-Packard laptop computer

The Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, property involved in illegal conduct giving rise to forfeiture, or as substitute assets for property otherwise subject to forfeiture.

4. The Defendant consents to the immediate entry of a preliminary order of forfeiture upon entry of the guilty plea. The Defendant further agrees that upon entry of the preliminary order of forfeiture, such order will be considered final as to Defendant's interests in the property. Defendant agrees to immediately withdraw any claims to property seized in connection with this case in any pending administrative and civil forfeiture proceeding, and consents to the forfeiture of all properties seized in connection with this case to the United States. The Defendant agrees to execute any and all documents requested by the Government to facilitate or complete the forfeiture process. The Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of the property seized in connection with this case.

5. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant acknowledges that

he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

6. The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant also agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

## ADVICE OF RIGHTS

7. The Defendant hereby acknowledges that he has been advised of his constitutional and statutory rights. Further, the Defendant agrees that he fully understands his right:

   a. To have an attorney, and if he cannot afford an attorney, to have one provided to him and paid for at government expense;

   b. To persist in his plea of not guilty;

   c. To have a speedy and public trial by jury;

   d. To be presumed innocent until proven guilty beyond a reasonable doubt;

   e. To confront and examine witnesses who testify against him;
   f. To call witnesses on his behalf;

   g. To choose to testify or not testify and that no one could force him to testify;

   h. To have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

8. The Defendant hereby acknowledges that he understands with respect to each count to which he pleads guilty, he thereby WAIVES all of the rights listed in (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

9. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

10. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## WAIVER OF VENUE FOR FEDERAL PROSECUTION

11. The Defendant acknowledges that any offense against the United States committed in more than one district may be inquired of and prosecuted in any district in which the offense was begun, continued or completed. *See*, 18 U.S.C. § 3237(a). The Defendant further acknowledges that venue for prosecution under Title 18, United States Code, Section 2250(a)(2)(B) may lie in:

   a. the Western District of Arkansas, in which the Defendant was physically located during all of the events described in the factual basis set forth in this Plea Agreement; and/or

      b.      the Eastern District of Wisconsin, in which the victim was physically located during all of the events described in the factual basis contained in this Plea Agreement.

The Defendant wishes to waive prosecution for a violation of Title 18, United States Code, Sections 2251(a) & (e) in the Eastern District of Wisconsin, and enter a plea of guilty to that violation in the El Dorado Division of the Western District of Arkansas.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

12.     Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this agreement, and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty, unless permitted to do so by the Court.

13.     The Defendant further agrees that a breach of any provision of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

      a.    admissions against interest, both oral and written, made by Defendant to any person;

b. statements made by the Defendant during his change of plea hearing;

c. the factual basis used at the change of plea hearing;

d. any testimony given under oath to a grand jury or petit jury;

e. any and all physical evidence of any kind which the Defendant has provided to the United States; and

f. any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## WAIVER OF APPELLATE AND POST-CONVICTION RIGHTS

14. In exchange for the United States' concessions in this Plea Agreement, the Defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, as follows:

   a. the Defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a);

   b. the Defendant reserves the right to appeal from a sentence which exceeds the statutory maximum;

   c. the Defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the Defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker*, 125 S. Ct. 738 (2005);

   d. the Defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;

   e. the Defendant waives the right to have the sentence modified pursuant to 18 U.S.C. § 3582(c), except for a rule 35(b) motion filed by the United States;

   f. the Defendant waives the right to appeal the District Court's determination of the amount of restitution and the Court's subsequent restitution order, if any; and

   g. the Defendant waives the right to appeal the District Court's determination of any forfeiture issues and the Court's subsequent forfeiture order, if any.

## MAXIMUM PENALTIES

15. The Defendant hereby acknowledges that he has been advised of the maximum penalties for the Count to which he is pleading guilty. By entering a plea of guilty to the one count Information, the Defendant agrees that he faces:

   a. a maximum term of imprisonment for 30 years;
   b. a mandatory minimum term of imprisonment for 15 years;
   c. a maximum fine of $250,000;
   d. both imprisonment and fine;
   e. a period of supervised release for any term of years **not less than five years, or for life,** pursuant to 18 U.S.C. § 3583(k) which begins after release from prison;
   f. a possibility of going back to prison if the Defendant violates the conditions of supervised release;
   g. a special assessment of $100.00;
   h. a special assessment of $5,000 pursuant to 18 USC 3014, if applicable;
   i. restitution as ordered by the court.

## SPECIAL ASSESSMENT

16. The Defendant agrees to pay $5,000 as the special assessment in this case.

## CONDITIONS OF SUPERVISED RELEASE

17. The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

   a. The Defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation

office or within a different time frame.

b. After initially reporting to the probation office, the Defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.

c. The Defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the Court or the probation officer.

d. The Defendant shall answer truthfully the questions asked by the probation officer.

e. The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where he lives or anything about his living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

f. The Defendant shall allow the probation officer to visit the Defendant at any time at his home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the Defendant's supervision that he observes in plain view.

g. The Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the Defendant does not have full-time employment, he shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about his work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

h. The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours.

    j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

    k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

    l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.

    m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## DEFENDANT'S ACKNOWLEDGMENT OF REQUIREMENT TO REGISTER AS A SEX OFFENDER

18. I, COLE THOMAS DIXON, understand and acknowledge that I have been advised and understand that, under the Sex Offender Registration and Notification Act, Title 34 U.S.C. § 20901 *et seq.* (formerly codified at 42 U.S.C. § 16901 *et seq.*)), I must register and keep the registration current in each of the following jurisdictions: where I reside; where I am an employee; and where I am a student. I further understand that the requirements for registration include providing my name, my residence address, and the names and addresses of any places where I am or will be an employee or student, among other information. I further understand that the requirement to keep the registration current includes informing the jurisdiction where I reside, am employed, or attend school no later than three business days after any change of my name, residence, employment, or student status. I have been advised and understand that failure to comply with these obligations subjects me to prosecution for failure to register under federal law in violation of Title 18, United States Code, Section 2250, which is punishable by a fine or imprisonment or both.

## RESTITUTION FOR IDENTIFIED VICTIMS PURSUANT TO 18 U.S.C. § 2259.

19. The Defendant agrees and acknowledges that victim restitution in this case is governed by the provisions of 18 U.S.C. § 2259 and will be determined by the court at the sentencing hearing. The Defendant acknowledges that restitution imposed is not dischargeable in any bankruptcy proceeding, pursuant to 18 U.S.C. § 3613(e).

## AGREEMENT TO PROVIDE FINANCIAL INFORMATION

20. Defendant agrees that no later than forty-five (45) days before the date set for sentencing, the Defendant shall provide to the United States Probation Office a financial disclosure form -- sworn by Defendant to be true and correct under penalty of perjury–listing all his assets and financial interests valued at more than $1,000. Defendant understands that these assets and financial interests include all assets and financial interests in which Defendant has an interest or had an interest prior to the Defendant's arrest or prosecution, direct or indirect, whether held in Defendant's own name or in the name of another, in any property, real or personal. Defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since the Defendant's arrest or prosecution, including the location of the assets and the identity of the third party(ies).

## PAYMENT OF MONETARY PENALTIES

21. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

22. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

23. The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater that the parties expected, the Defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

24. At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of the Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

25. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

26. The United States agrees not to object to a finding by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater, and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following a) falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, or gives conflicting statements about that involvement, c) is untruthful with the United States, the Court, or Probation Officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

27. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

    a. make all facts known to the Probation Office and to the Court;

    b. call witnesses and introduce evidence in support of the Presentence Report;

    c. contest and appeal any finding of fact or application of the Sentencing Guidelines;

    d.    contest and appeal any departure from the appropriate Guideline range; and

    e.    defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

28. The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

29. The parties agree that nothing in this Agreement binds the District Court to:

    a. make any specific finding of fact;

    b. make any particular application of the Sentencing Guidelines;

    c. hand down any specific sentence; and

    d. accept this Plea Agreement.

30. The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

31. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESMENT

32. The Defendant agrees that he will pay $100.00 as the special assessment in this case.

## REPRESENTATIONS BY THE DEFENDANT

33. By signing this Plea Agreement, the Defendant acknowledges that:

   a. The Defendant has read this Agreement (or has had this Agreement read to him) and has carefully reviewed every part of it with defense counsel.

   b. The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.

   c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.

   d. The Defendant is satisfied with the legal services provided by Defense Counsel in connection with this Plea Agreement and matters related to it.

   e. The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation, and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

34. By signing this Plea Agreement, Counsel for the Defendant acknowledges that:

   a. Counsel has carefully reviewed every part of this Agreement with the Defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.
   b. Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

   c. The Defendant's decision to enter into this Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

35. The Defendant and his attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this  27th  day of  August , 2020.

*[signature]*
COLE THOMAS DIXON
Defendant

*[signature]*
DAVID PRICE
Attorney for Defendant

DAVID CLAY FOWLKES
FIRST ASSISTANT U. S. ATTORNEY

By:  /s/ Graham Jones
GRAHAM JONES
Assistant U. S. Attorney